E. H. Ewing, Special J.,
delivered the opinion of the Court.
James Winchester died in 1826, having made a will providing for his wife, and for the support of his minor children, leaving his lands (except those devised to his widow) to descend. His lands were situated in various counties of Tennessee, some of them in, and some out of the district of the Chancery Court, then held at Carthage. His heirs consisted of two adult males, two married women, several minor children, and two minor grand-children. Lucilius Winchester, one of his adult sons, became guardian for the minor children. In January, 1829, a petition was filed in the Chancery Court at Carthage, for the sale of certain lands so descended. This petition was signed by the adult sons, by the married women and their husbands, by Lucilius Winchester, as guardian for the minor children, and by Orville Shelby, who is stated in the body of the petition to be next friend, and father of said minor grand children. At the term of the Court at which this petition was filed, the Chancellor made an order decreeing the sale *476 of tbe lands, and appointing commissioners for that purpose. This decree contains special directions as to the sale and the report, and authorizes the sale to be made by division of the lands into lots, if deemed expedient. The commissioners appointed, were Lucilius Winchester and William Cage, who made sale of the lands mentioned in the decree, and made a particular report thereof to said Court, at its July Term, 1829; they reported, also, the sale of a tract of land not mentioned in the petition, lying in Stewart county, and of two tracts in Weakley county, which it has been supposed were not mentioned in the petition. This report was not excepted to. Certain of the lands, which had been bought by Lucilius Winchester, were at said last mentioned term, ordered to be resold by said commissioners. The tract in Stewart county being an undivided half of 1000 acres, was one of the tracts purchased by said Lucilius; he was, also, the purchaser of one of the tracts in Weakley, of 100 acres, the other tract in Weakley, was bought by a third person. Said commissioners made two additional reports, showing the sale of the 100 acres in Weakley, and of the other lands ordered to be resold, except the undivided half of the 1000 acres in Stewart, which is not again mentioned in the record. These two reports have no date. At July Term, 1830, a decree was made, authorizing the commissioners to make titles upon payment of the purchase money, and requiring them to give bond in the penalty of $25,000, to account for the proceeds of the sales. This bond was given, and a copy of it is in the record. At the July Term, 1831, commissioners were appointed to settle with Winchester and Cage, the commissioners *477 of sale, and to ascertain tbe share of each of the heirs in the proceeds of the land. By the same decree, the report of L. ■ Winchester and Cage, is confirmed and ordered to be enrolled. The commissioners appointed to make settlement, &c., made a report at January Term, 1832, which was confirmed, and L. Winchester and Cage ordered to pay over the proceeds of- sales in accordance therewith. At the January Term, 1835, a petition was filed in the name of all of said heirs (except Lu-cilius Winchester, who was then dead, and who was represented by his administrator, Jo. C. Guild,) signed by counsel, stating the previous proceedings in substance, and stating the death of L. Winchester and praying to have another person appointed commissioner in his place. The Court appointed Yalerius Winchester in his stead. At January Term, 1837, another petition was filed, of a similar character, stating the death of William Cage, and praying that Yalerius Winchester alone, might be authorized to make titles, and it was ordered accordingly. At August Term, 1840, a similar order was made, appointing J. W. Baldridge to make titles, Y. Winchester being then dead. And at February Term, 1848, Baldridge having declined to act, Alfred Wynne was appointed in his place. No further proceedings appear to have been had in the cause. There was neither appeal nor writ of error. In the summer of 1858, Mrs. Almira Wynne and Mrs. Louisa Rucker, the two married women above mentioned, by their next friend, John W. Head and Helen M. Winchester, (who alleges herself to have been an idiot from her birth, and who was oné of the minors under. the proceeding of 1829,) by her present guardian, George W. Winehes- *478 ter, applied to tbe Chancellor sitting at Carthage, by-petition and affidavit, for leave to file their bill of review, to review the decrees of 1829, and the record aforesaid, on the ground of “ new matter and newly discovered proof.” And as a matter of right, (alleging in the same bill errors in law apparent upon the same record,) they file their bill, praying to have said decrees and record reviewed, and the decrees) reversed and annulled. To this bill the husbands of the said Almira and Louisa are made defendants, as are also the other heirs of said James Winchester, and also many of the purchasers and sub-purchasers of the lands. The matters assigned as error in law, in the bill and the argument, taking them up in their proper order, and not precisely in the order stated in the bill, are as follows, viz.:
1st. That the original proceeding being under the act of 1827, chap. 54, should have been a bill, and the suit “ conducted as equity suits-that a petition making no defendant, is not a bill nor a suit, and that the decrees are therefore void, and that a void decree is a proper subject of a bill of review.
2d. That if a petition be an admissible mode of proceeding, the married women should .not have been joined with their husbands, but should have appeared by next friend.
3d. That Helen M., whether as idiot or minor, should not have been joined with the adult petitioners, even if a petition were a permissible mode of proceeding in some cases, and that this was error at best.
4th. That no proof appears by the decree to have *479 been made, and that this is required by said act to be made to give jurisdiction.
5th. That the decree of January, 1829, does not recite the facts upon which it is founded, and that this is, and was error, according to the course of a Court of Chancery, even before the adoption of the Chancery Rule of 1880, requiring the facts to be recited, &c.
6th. That it Was error to sell the lands in Stewart and Weakley, the same not being embraced in the pleadings previous to the first decree, and that this is not aided by failure to except to the report, nor by the subsequent petitions filed by the original petitioners.
7th. That Helen M. was, in fact, an idiot, as well as a minor, at the passing of the decrees, and that under the saving in the act of 1801, chap. 6 sec. 58, she may now show this fact, and that as an idiot, she had no guardian, made no appearance, and that this is error.
8th. That some of the lands were not within the chancery district, and that the Court had, therefore, no jurisdiction to sell them under the act of 1827.
9th. That the married women were not, and that they should have been privily examined.
10th. That in the petition the lands are not sufficiently identified.
11th. That it was error to sell the undivided one-eighth of 1309 acres of land in Shelby county, or to sell it as severed, when no valid partition had been made.
12th. That the petition is defective in its statement of facts, and does not come up to the requirements of the statute, .in showing that partition could not advan *480 tageously be made, or that a sale was manifestly for the advantage of the parties.
18th. That no day was given to the infants in Court.
And 14th. That the complainants were not, in effect, made parties, even if petition were a proper mode of procedure.
The grounds taken in the bill of review, as one for new matter or upon new proof are:
1st. That the interest of the heirs in the 1809 acres of land near Memphis, was one-fourth instead of one-eighth, as stated in the petition, and that this has been lately discovered.
2d. That after the decree for sale at Carthage, a proceeding which was void, took place in the County Court of Shelby county, for the division of the said tract of 1309 acres, and that one-eighth in severalty, was assigned, under this proceeding, to the heirs of Jas. Winchester, that this one-eighth, as assigned, was sold by the commissioners, instead of an undivided one-eighth, and that this fact was only lately discovered by said complainants, through their counsel and next friend, who makes the affidavit.
3d. That a similar proceeding in the County Court of Shelby, had taken place in regard to the tract of land called in the petition at Carthage, 252 acres lying in Shelby county; that this proceeding, though before the first decree, was void, and that in fact the heirs of Winchester, instead of owning this 252 acres in severalty, owned an undivided forty-ninth part of a 5000 acre tract near Memphis, and that this was only lately discovered, &c.
*481 4tb. That the lands in Stewart and Weakley were sold without authority, and this has just been discovered. The application for leave to file the bill of review, as for new matter and upon new proof, was made to the Chancellor sitting at Carthage, at the August Term, 1858. Leave was refused. The bill was then filed as for errors apparent on the face of the decrees, or upon the record; whereupon, (it is said in the decree of the Chancellor, “upon inspection of the bill of review and of the original record,”) the bill of review was dismissed. From this decree refusing to permit the filing of the bill, as for new matter or new proof, and dismissing the bill as filed for errors apparent, &c., the complainants have appealed to this Court.
No objection is taken to the ruling of the Chancellor, upon the ground that his action was premature in dismissing the bill as for errors apparent, &c.; though it is said, it would have been more proper in form, that he should have waited for process bringing in the defendants, and a motion by them to dismiss or a demurrer. This informality, if it be such, need not, therefore, be noticed.
It is, however, objected, in limine, by the defendants, the purchasers of the lands, that under the act of 1801, regulating the practice in Courts of Chancery, chap. 6, sec. 53, and the clause saving the rights of married women, &c.; no bill of review can be filed, either for new matter or for errors apparent, &c., without leave of the Court first had and obtained. The clause referred to, and the previous clause, are as follows, viz.: “ Provided that no bill of review shall be brought, or a motion made therefor, except within three years from .the • time *482 of pronouncing such decree, saving to infants, femes covert, persons non compos mentis, &c., a right to move for a bill of review within three years after such disability shall have been removed.” It is urged with much force, and no little plausibility, that though ■ the filing a bill of review for errors apparent, &c., within three years, is matter of right under the statute, that such right was not intended to be extended to those under disability for an indefinite time; and to sustain this view, attention is called to the difference of the words in the two clauses. In the one, the words used are, “ shall be brought or a motion made therefor;” in the other, “ saving to infants, &c., a right to move.” It is insisted that these last words imply a discretion and control on the part of the Court, and that it might well be supposed that the Legislature looking to the intervention of new rights and interests in the long lapse of time, that might occur in many eases, before the removal of a disability, would not make the saving complete to the disabled party, as if his bill had been brought within three years. Again, it is urged as a probable construction, that the saving does not, in any manner, embrace a bill of review for errors apparent, &c.; that by the use of the word “move,” it is evinced that it was only the intention to reserve the rights of a party in that description of bill of review, wherein leave of the Court was necessary. Appreciating the force of this reasoning, we are not, however, prepared to say that the construction insisted upon is correct; on the contrary, in analogy to other statutes of limitation, where rights of infants, &c., are saved, and taking into consideration the general doctrine that persons under dis *483 ability cannot, ordinarily, have laches imputed to them, we are of opinion that the words, “a right to move for a bill of review,” are to be held equivalent to the words, “ a right to move for a review,” &c. Besides, we think, that if so important a distinction was intended to be taken, it would have been more clearly announced, and not have been left to ingenious construction. To exclude altogether, a right to file a bill of review for errors apparent, &c., after three years, according to the second construction above referred to, would be to place infants, &c., upon the same footing, in this regard, as adults, which it is not to be supposed has been done, where there is at least a seeming reservation in their favor, unless such construction is demanded by the-highest considerations of public policy. A second objection taken to the bill of review in this case is, that the-husbands should sue jointly with their wives, and that as the husbands are not within the saving of the act of' 1801, the bill cannot be filed so far as the married women are concerned, until the removal of the disability.. It is true, as a general rule in equity, as well as at law, that the husband must join in the suit; see Story’s Eq. Pl., sec. 61. To this rule, however, there are many exceptions, and whenever it is necessary for the protection of the wife’s interest, the Court will change the parties, making the one or the other complainant or defendant, according to the exigency of the case. In this case there would seem to be some antagonism . between the interests of the husband and wife. The husband has received the proceeds of her land, which he or his estate might be made to account for, in case of a reversal of the decree under which it was sold. In this. *484 case too, the husband, by his laches, has placed himself in an attitude where he cannot join his wife, and yet, though he has lost his own rights, hers remain in full force, and it would certainly be pressing the rule, requiring the husband to join (which is, in part, generally for the protection of the wife) to a strange consequence, if it could be used for her injury. The case of a bill of review, is not analogous to that of a suit for the land, where the joint estate is barred, and where neither can sue.
In other respects, in regard to the form of the proceeding, there does not appear to be any valid objection. There was a petition and affidavit, an offer to secure costs and other sums of money which might be required to be paid, and also security for costs of the bill filed as of common right. A remark may, however, be proper as to the junction of the two kinds of causes for review in the same bill. There would seem to be no objection in reason, to such a course, and the point has been so adjudged in the case of Colville v. Colville, 9 Hum., 526, and recognized at last term, in the case of Richmond v. Sypert, M. S. Indeed no objection is made here on this account.
This brings us to the consideration of the substance of the bill of review. Can this bill be sustained as founded upon new matter or new proof? The ordinance of Lord Bacon will be found at large, in the case of Eaton v. Dickinson, 3 Sneed, 401, and need not be repeated here. Such a bill must be for “ new matter which hath arisen in time after the decree,” or, “upon new proof that is come to light after the decree was made, which could not possibly have been used when the *485 decree passed,” and can only be filed “by special license of the Court, and not otherwise.” It may also be remarked, that the new matter or new proof must be such as would have affected or altered the decree if offered at the time the “decree passed;” in other words, it must be relevant and material. In regard to the new matter and new proof, it is said by complainants, that two of them are married women, that they were so at the time of the decree, and have since so remained, that the other is an idiot, and has been such since her birth, and that no laches can be imputed to them. Certainly it is always a consideration where a demand is made after a great lapse of time, that the party making it has been, during the whole time, laboring under a legal disability. Parties in such situations do not, however, in many instances, wholly escape the consequences of neglect or inattention on the part of those whose duty it was to protect their interests. We feel fully the difficulty of attempting to eliminate any general principle from the multitude of cases to be found in the books upon the subject of laches. Each case has been made to depend, in a great degree, upon its special circumstances, and too much, perhaps, upon the particular consequences which might arise from the decision. In reason, surely laches should be imputed rather to an adult male, than to a married woman; to a married woman, ordinarily, rather than to an infant, to either of the two last, rather than to an idiot. But no general rule of a practical nature, can be safely laid down? nor is it to be expected, that abstract justice, after a great lapse of time, can, in all cases, be reached for all parties concerned in a cause.
*486 It will be, perhaps, agreed on all hands, that the proceedings of Courts of Justice of general jurisdiction, should have greater benefit from presumptions, and the curing hand of time, than acts or omissions in private transactions. Representation in Courts of Justice, is a necessity of civilized society, and the acts or neglects of the representative must, in some degree, be binding upon the party represented. In this view, then, is it enough that John W. Head, at present the next friend of the married women, and George "W". Winchester, at present the guardian of Helen M., who is said to be an idiot, should make an affidavit that the new matter and new proof have lately come to their knowledge ? Should we not have the affidavits of the married women themselves, and of their husbands, who were parties to the original petition, especially of Alfred Wynne, who was appointed under one of the decrees to make title? Should we not inquire what was the knowledge of Lucilius Winchester, who was, at the time of the decree and afterwards, guardian for Helen M. ? What the knowledge of John J. White, who was their solicitor ? The knowledge of Lucilius Winchester must have extended to all of the matters now alleged as newly discovered. As commissioner, he sold the lands in Weakley and Stewart, and also the lands in Shelby, according to the assignment made under the so-called partition made in the County Court of that county. He sold an eighth instead of a fourth of the 1809 acres, in the face of the fa.ct that two-eighths were laid off to Winchester’s heirs; he sold the 252 acres, as laid off in severalty. His brother, Valerius, conveyed the eighth left by him, as upon the bond of their father, and which bond it is not denied, at some *487 time, bad an existence. In addition to these things, after all of these sales were made and reported, two petitions were filed by all of the heirs, recognizing them. It is too late for the married women to say that these things were newly discovered. It is true, that if the idiot is to be bound at all, it must be upon the knowledge of her agents and representatives, and in the absence of all fraud and collusion, we think she must be so bound. In accordance with this view, is the case of Sheffield v. The Duchess of Buckingham, decided by Lord Hardwicke. Hardwicke’s Ch. R., page 684. He says in that case, in substance, that it is the knowledge of those, who were parties at the time, their guardians and agents, and not of subsequent solicitors or the heirs of the original parties that should be looked to.
But how have the complainants been aggrieved by their alleged want of knowledge. It is ' not alleged that it would have been better for them that the one-eighth of 1309 acres should have been sold undivided, than that it should have been assigned to them, and sold in town lots. It is not alleged that they did not get one full eighth in .the division. As to the other eighth, if that has been improperly conveyed by their brother Valerius, the decrees in the original case have nothing to do with it, and do not throw even a cloud over their right. If it were error to have sold an undivided eighth of a tract of land, or to have sold the eighth severed, and in parcels, under a void division, that is for the other branch of the case. The same remark will apply to the 252 acres in Shelby county, part of the Ramsay grant. As ' to the lands in Stewart and Weakley, if they were sold without authority, all possible benefit that could be derived from *488 a bill for new matter, can be had upon that part of the bill which proceeds for errors apparent upon the face of the decrees. But in fact, in regard to these lands, the record would seem to show some things that appear to have escaped counsel on both sides. As to the undivided half of 1000 acres in Stewart, purchased by Lu-cilius Winchester; this, though ordered to be resold, was never in fact, resold at all. As to the two tracts in Weakley, they are both described in the petition, though, perhaps, erroneously stated to lie in Henry county, in which county ^ they probably were at the time of their location, though probably also in Weakley, a new county, at the time of their sale. The misdescription in the petition, in any event, would be cured by the report and its confirmation, as decided in Todd v. Cannon, 8 Hum. At last, is this new matter, in the sense of the ordinance ? If it be used to impeach the decree of July, 1829, it cannot affect it, as the so-called new matter is nothing but action under that decree, which, whether erroneous or not, could not impugn it. If it be used to impugn subsequent decrees, then, as to them, it is not new matter, as it had already arisen in time, &c. Upon these matters as new proof eome to light, &c., we have already sufficiently commented. The idiocy of Helen, is neither new matter, nor is the proof of it alleged to be newly discovered. Upon her rights as an idiot, • something is said in another part of this opinion.
Leave to file the bill for new matter was addressed to the sound discretion of the Chancellor, which leave, we think, was properly refused. How far length of time, change of circumstances, the intervention of new rights and interests, might be looked to in weighing the *489 propriety of granting such leave, it is not necessary in this case to consider, as there are sufficient grounds to refuse the leave without taking into account such considerations. It may well be said, however, that where even a legal discretion is to be exercised, that it will bear debate, whether the interests of two or three innocent persons should be suffered to outweigh those of a hundred others equally without fault, but in a less favorable legal position. Should not the complaining parties be left to the inflexible rules of law to work out their stern claim. It remains to consider, whether the proceedings in the Chancery Court, at Carthage, are erroneous, and if so, whether the errors are of such a character as can affect Iona fide purchasers of the land under the decrees. I say bona fide purchasers of the land, because no error is alleged affecting the original parties to the cause. All the parties were petitioners, and all aggrieved in equal d_egree and in like manner, by the decrees and sales, however their rights might now vary, some being bound, and others not; some barred, and others not. No allegation is made of unfairness on the part of purchasers, or of collusion by or with any one, and no grievance is alleged, except that some of the lands have greatly risen in value.
The first error in order, as already stated, is, that the proceeding was by petition, and not by bill; and that the case was not conducted as other suits in equity, as required by the act of 1827, already referred to. This is a question which presented some difficulty to the member of the Court who writes this opinion; his impression had been that a proceeding inter partes was contemplated by the act, and that a petition was, at *490 best, barely, permissible under its provisions. He knew that tbe practice of filing petitions was sanctioned, however, by many of tbe ablest members of tbe Bar.
In tbe origin of the Court of Chancery, so far as we are able to discover, the first step was a petition to the Chancellor, complaining of some wrong done, or of some right withheld, and asking that the defendant might be brought before him. No distinction seems then to have been taken between the terms petition and bill. Later, and when form had somewhat advanced, and when the subpoena had been introduced, proceedings of this description were required to be in English; and • from that time the petition or bill began to be called an “ English bill,” and, finally, simply a bill, or bill in equity, the name petition having beén dropped for an original proceeding. Petitions, as we find the word now used in works upon pleading and practice, are confined to applications of an interlocutory character pending a suit in equity, or, in England, to cases of special jurisdiction under acts of Parliament, where this mode of proceeding is directly indicated or necessarily implied. Dan. Ch. Pr., 1801. Under what are called the inherent powers of a Court of Chancery, it is not easy to conceive a case which would not require parties complainant and defendant. The proceeding is always to assert some right denied, or to have some wrong redressed by another. This is not necessarily so under our act of 1827. It may be necessary and proper to proceed under it when there is neither right withheld nor wrong done; but where there exists merely the vis inertice of disability, and where the advantage to the disabled party, of a sale, may be a s great as to the party who *491 is sui juris. There may be, and are, cases of sole • owners of property who labor under disability, and whose lands it would ■ be proper to sell. A petitioner (not sui juris) jointly with others, though not so conveniently or availably under the protection of the Court as if he were a defendant brought in by process with either a general guardian or guardian ad litem, is still under its shield, and his prochein ami may be made to subserve his interest.
A subsequent Legislature seems to have regarded the mode of procedure proper to sell lands of infants under the act of 1827, as either by bill or petition. By the 18th section of the act of 1885, ch. 20, exclusive original jurisdiction is given to the Chancery Court of all cases in equity to be commenced by bill, petition, or otherwise,' except petitions or bills for the partition or sale of real estate, &c. The case of G. C. Brown, 8 Hum., 207, is a case where a petition was filed by a •minor, by • iris guardian, to sell land of which he was sole owner; and this was decided to be competent under the act of 1827. No question was made as to the propriety of proceeding by petition, although it was necessarily involved in the case, as he must proceed in that way if he proceeded at all. .This case was recognized as law at the last term in the case of Hickman v. Brunson, though this point was not alluded to. In the same volume of Humphries’ Reports is the case of Blackmore v. Shelby, page 439. This was a case decided upon a petition, filed in the Circuit Court of Montgomery by •adult males, married women joining their husbands, and minors by their guardian; and the proceeding was held good. Finally, at the last term of this Court, the case *492 of Davidson v. Bowden et al., was decided, where the petition was of a similar character with the last, and though the petition was dismissed for other causes, and it was held to be error to make such a joinder of parties, the proceeding by petition was not held to be void. The mode of proceeding by petition seems to be piacticed in North Carolina upon a statute similar to ours, (see 2 Dev. & Eat. Eq., 63,) though it does not appear that it is required there to proceed by bill, or that the suit is to be conducted as other suits in equity. The point presented in this case seems not heretofore to have been directly made upon the act of 1827. We are of opinion, however, that it would be going too far now, after what has been already shown, to declare a proceeding by petition under the act of 1827, void. It is not, however, intended to disturb the decision of the Court in Davidson v. Bowden et al. It is still held that it is error to file a petition embracing adults, married women and their husbands, and minors together, and that the most proper mode of proceeding under the act of 1727, where minors are interested, is by bill inter partes, and making the minors defendants.
The second matter assigned as error is, that the married women were joined with their husbands in the petition. We deem this not only no error, but there is some doubt whether it would not have been error if they had not been so joined. The subject matter was not the separate estate of the wife, and she had no interest antagonistic to that of her husband. Story’s Eq. Pl., § 61. Such joinder was in accordance with the general practice in this State.
*493 Upon tbe third, matter assigned as error, upon the reasoning already offered and upon the authority of the Case of Davidson v. Bowden et al., above referred to, we are of opinion that the joining of Helen M., as a minor, with the others, was erroneous. The fourth and fifth matters assigned as error will be considered together.
According to the case of Eaton v. Dickinson, it is not competent to look to the proof upon a bill of review. It is sufficient, if the decree is consistent with itself and the pleadings. It is insisted, however, that it should appear in the decree itself that “satisfactory proof” was made, or that enough is not recited to give the Court jurisdiction, for that the jurisdiction given by the act of 1827 is a special jurisdiction, and not (according to a remark of Judge Reese, in the case of Norment v. Wilson, 5 Hum., 311) to be given any amplitude of construction. The case of Davidson v. Bowden et al., is also referred to upon this point. Consistently with both of those cases, the decree in this case, we think, may be supported. The statement in the decree, “ the Court being satisfied of the truth of said petition, and that it is for the manifest advantage of the heirs that said lands be sold,” we regard as equivalent to the statement that it appeared to the Court that the facts stated, &c., were true. The statement that they appeared to the Court, or that the Court was satisfied, &c., could not be made with truth, if the facts appeared otherwise than by proof, as their appearing in any other way would have been equivalent to their not appearing at all. In the case' of Davidson v. Bowden, the questions came up upon a bill by the purchasers, while the original cause was still in Court, and the proceedings being still *494 in fieri, the matters were examined as upon w'rit of error or appeal. What was called the proof was looked at and compared with the decree, and in that case it is said the decree itself, in general terms, ordered the sale without the statement of any facts, or expression of any opinion that the lands could not properly be partitioned, or that it was for the interest of the minors. It is said, however, that independently of the act of 1827, and upon the general requirements of a Court of Equity, the facts upon which a decree is founded should be stated in it, and that none are ' stated in this decree. It will be observed that this decree was passed before the adoption of the Chancery rule of 1830, requiring the facts to be stated in the decree. Subsequently to the adoption of this rule, and upon a case arising under it, the cause of Burdine v. Shelton came before this Court, (see 10 Yer., p. 41.) and there the decree sought to be reviewed stated that the cause “ came on to be heard upon the pleadings and proof, &c., and the matters being considered and fully understood by the Court, the Court thinks proper to order and decree.” The Court held that this was not a sufficient statement of facts within the rule, and perhaps would have held that it was not sufficient before the rule. It is not very clear what were the requirements in this respect before the adoption of the rule of 1830. There had not, perhaps, been any very well settled practice in Tennessee. Mr. Story, in his Equity Pleadings, § 407, says: “ In England decrees are usually drawn up with a special statement of, or reference to the material grounds of fact which support the decree. In the Courts of the United States, the decrees are *495 usually general, without any such statement of facts.’” Again he says, (upon a bill- of reyiew,) “taking the facts to be as they are stated to be upon the face of the decree, you must show that the Court have erred in point of law. If, therefore, the decree do not contain a statement of the material facts on which the decree proceeds, it is plain that there can be no relief by a bill of review, but only by an appeal to some superior tribunal.” He refers to Dexter v. Arnold, 5 Mason R., 311. In the case of Whiting v. The Bank of the U. S., 13 Peters, p. 6, &c., the Court say: “ In America the decree does not, ordinarily, recite either the bill, answer, or pleadings, and, generally, not the facts upon which the decree is founded.” Upon this decree, then, made before the adoption of our rule of 1880, it is believed the recital is sufficient. Its statements are equivalent to the statement, it appeared to the Court that the facts stated in the petition are true; and thereupon the Court, first expressing an opinion that the sale would be proper, proceeds to decree. In Bur-dine v. Shelton, nothing is stated to have appeared to the Court, nor is any opinion expressed. From the intimation in that opinion, the decree in this case would, probably, have been held good under the rule of 1830. The decision of this point, from the existing state of the law, can, probably, have but little effect beyond the present case.
Upon the sixth ground of error enough has been already said to show that this assignment is made from a mistake in the examination of the record. The land in Stewart was, in fact, never resold, and the lands in Weakley were only misdescribed, which misdescription was corrected by the report.
*496 Seventh. Was it error that Helen M. Winchester appeared as a minor, by her guardian as such, when she was in fact an idiot, (as well as a minor,) and had no guardian as such ? It has been already said that she could not take advantage of this upon a bill of review for new matter. Is it error apparent on the decree ? It does not appear at all in the proceedings, and can not, therefore, be error apparent, &c. If error at all, it is error in fact, and would be ground for an original bill, 'either in the nature of a bill of review or otherwise. Upon the effect of such an error, if it be one, this case does not demand a decision.
The eighth ground of error is, that some of the lands were not in the Chancery district. This was not material. Some of the lands were within the district, and certainly it was not intended by the Legislature that there should be as many bills as there were tracts of land in different districts or counties. Besides, this has been decided not to be error in the case of Todd v. Cannon, 8 Hum., above referred to. And such has, as I am informed by my brethren, been the practice of the Court.
The ninth cause assigned for error is, that the married women were not privily examined in regard to their consent to pass their real estate. These lands were derived by descent, and. were not the separate estate of the wives. There are many cases in which wives have been privily examined in Court in regard to the passing of their separate estates, in regard to their waiver of an equitable settlement, &c., &c., but there is no case known to the Court where the wife has been so examined where it has been sought to .divest her of *497 ■mere legal interest in land held jointly with ber husband. Since tbe passage of the act of 1801, § 48, authorizing the divestiture of title as a substitute for conveyance, the mode of compelling a conveyance by attachment has fallen altogether into desuetude, and could not now be lawfully resorted to, and, perhaps, never could have been brought to bear directly against a married woman. She, under the old mode of proceeding, could • only be made to suffer vicariously by laying the husband by the heels, and this in all cases was not an effectual remedy. Suppose, under the act of 1827, a married woman should be unwilling to have her land sold, and should therefore by the other tenants in common be made a defendant, could not her interest in the land be divested without 'a privy examination? It would seem that it could, or the statute would be wholly nugatory. Suppose two married women to be tenants in common of a tract of land which musi^ be sold for partition, one or the other must be complainant. Can one demand against the other a divestiture of title by decree when her own estate can only be parted with by privy examination ? Whether a married woman should be privily examined or not can not, certainly, depend upon her accidental position in the suit as complainant or defendant. When a bill is filed in a Court of Chancery by the husband, in the name of himself and wife, it is sometimes called the suit of the husband, and the wife is in many eases not in all respects bound by such suit. Ordinarily, however, as already remarked, in cases where their interests are not antagonistic, a joining is not only proper, but necessary. Our act of 1827 was for convenience, intended to act by divestiture of title by decree, and it chooses to re *498 pose some confidence in the conjugal relation, and not to regard husband and wife as occupying that attitude militant which some of our law books seem to countenance, and which the civil law directly encourages.
The objection that the lands are not sufficiently identified comes, certainly, too late upon a bill of review, after the special reports and other proceedings by which this cause of objection, if it existed, was thoroughly obviated. A demurrer for this cause might have deserved some consideration. Todd v. Cannon, 8 Hum.
Was it error to direct the sale of an undivided one-eighth of 1,309 acres of land near Memphis? Such a decree would not be void under the act of 1827, as it is a present interest, embarrassed only by its connection with other claimants. Yet, certainly, such a mode of sale would not be favored upon appeal or writ of error, and would probably be held erroneous. We see, however, in fact, by the subsequent proceedings in the cause, that this one-eighth had been severed from the other portions of the land, whether, by a valid proceeding or not it is not necessary to inquire as it was for the benefit of complainants, the sale of it, in its severed form, was reported and confirmed, and two petitions filed recognizing such severance and sale. The parties were not aggrieved by it in fact, nor do they now claim that they were aggrieved by it. Story’s Eq. Pl., § 409.
The case for a sale, it is said, is not stated with sufficient certainty in the petition. This is but faintly insisted upon; and, indeed, upon looking into the petition, we see nothing to ground it upon. It would not have been good upon special demurrer. The petition *499 complies, in this respect, with all of the requisitions of the statute.
Something was said of a day in Court for the infants. The doctrine upon that subject has no application where title is divested by decree, but only where the infant is directed to convey. This was held in England so long ago as the time of Lord Hardwicke, who says in Sheffield v. The Duchess of Buckingham, already referred to, “ I take it to be the course of the-Court not to give day unless a conveyance is directed1 either in form or in substance.”
The last objection is one that, if well founded, would seriously affect the whole proceeding. It is, that the present complainants were not made parties to the petition. It is admitted for the idiot complainant, that the petition was signed by her guardian, stating that he signed as well for himself as for her; and it is also-not denied, though evasively admitted by the married, women, that it wa,s signed by them. Now the petition sets out “ your petitioners, the undersigned,” and this would seem to embrace the married women. They too-are, together with Helen M., named in the petition as-heirs of James Winchester. In another part of the' petition it is said, “your petitioners represent unto your honor that the following real estate has descended to-them as heirs of the said James.” Again, it is said in the petition, “ so far as the minor heirs are concerned,, it is equally for their interest, with that of the rest of' your petitioners.” Thus identifying the petitioners with the heirs. The form of signing by the guardian is certainly not material; whether he signed Lucilius Winchester for Helen M. or Helen M. by Lucilius. Sub *500 stantially the petition is as good as if it had set out “your petitioners, A., B., C., D.,” &c.
How far can the errors and irregularities in the proceedings at Carthage be examined by bill of review? It has been strongly insisted for complainants, that for errors apparent on the [.face of the record a bill of review stands upon the same footing as a writ of error; that the discovery of error must necessarily be followed by reversal. This position is not favored by the reflection that for a writ of error only one year is allowed, with no saving for persons under disability, and that for a bill of review three years are allowed, with an indefinite saving for persons disabled. And this was so previously to the act of 1885, when a writ of error could not be used to examine into the facts of the case. In the view of the complainants a bill of review may have the effect against the original parties of reversing so much of the proceedings as were erroneous, and of striking from under third parties, purchasers, and others, the only prop of their titles; in effect, as to them, of declaring the whole proceedings void.
Now we think it may be laid down as a general rule, that whenever a Court of Chancery, or other Court of general jurisdiction, possesses jurisdiction of the subject matter of litigation, and has acquired jurisdiction of the parties, that as to third parties interested under its judgments and decrees, its proceedings cannot be held to be void after a final disposition of a cause. And, in this respect, it is not material whether the jurisdiction be inherent or statutory, provided the statute be of a general and public nature. To this, as a general proposition, a general assent may be given; and still it may *501 be urged, that for consequences a Court is not responsible, nor can they be looked to, that error authoritatively demands reversal.
It has been urged upon some general expressions in elementary writers, that when a decree has been executed the party complaining may, upon reversal, be put into the situation in which he would have been, if the decree had not been executed. The expression thus used, (among others by Mr. Story, in his Eq. Pl., sec. 420,) we apprehend relates only to the original parties to the decree. He is only taking a distinction in general between decrees not executed, and those which had been executed. If it is to be given a larger scope, it is not sustained by authority. Now in this case, no grievance is complained of under the execution of the original decree, by one of the parties against another, and evidently the purchasers, or some of them, are made parties to affect them, and they alone can be affected.
If a reversal is not to affect purchasers in this case, it would be idle and nugatory, or possibly hereafter embarrassing. If it is to affect them, and them alone, then can a reversal be had ?
If we appeal to reason, as upon a case of first impression, it would seem to be too much to expect, that a purchaser at a chancery sale should be bound to take notice, not only that the Court had authority to make it, but that it had pursued that authority with technical nicety and regularity through all the intricacies of a chancery law-suit. If, in addition, the purchaser should know that irregularities and errors might be visited upon him, not when the transaction was fresh and his condition in a great degree unchanged, but *502 even at the end of a long life, or upon his children after his death, it would throw a burden and a check upon public sales that would materially clog the wheels of public justice, and injuriously affect the interests of parties litigant. Upon this question, however, we are not without authority. The case of Bennett v. Hamill, 2 Sch. & Lef., 577, is one where a bill was filed by Bennett to impeach a decree, (made during his infancy,) for fraud and error, and to have a sale, made under it, set aside. The Chancellor, Lord. Redesdale, “a great name in the law,” was of opinion that there had been both fraud and error in the original proceedings, the fraud not, however, affecting the purchaser. He says, “ I must confess, after considering this a good deal, I think it would be too much to say that a purchaser under a decree of that description, can be bound to look into all these circumstances; if he is, he must go through all the proceedings, from the beginning to the end; and have the opinion of the Court that the decree is right in all its parts, and that it would be impossible to alter it in any respect. The cases warrant no such opinion. On the contrary, as far as I can find, the general impression they give is, that the purchaser has a right to presume that the Court has taken the steps necessary to investigate the rights of the parties, and that it has, on that investigation, properly decreed a sale; then he is to see that this is a decree binding the parties claiming the estate, that is, to see that all proper parties to be bound, are before the Court.” In such a case, he concludes, that though the decree may be erroneous, the title of the purchaser ought not to be invalidated. In strictness, it is true, this- was not a bill *503 of review, but an ■ original in tbe nature of a bill of review, and perhaps on this account stronger than the case now before the Court. In this opinion of Lord Redesdale, he refers to the case of Lloyd v. Johnes, before Lord Elden, 9 Ves., 37, and says that it was a case fully considered, and where the irregularity in the proceedings was far beyond that in Bennett v. Hamill, and yet Lord Elden conceived that the title of the purchaser could not be impeached on these grounds, “ that he had a right to be protected, for that a purchaser had a right to presume that the Court had done right.”
These cases are mentioned with approval by Chancellor Kent, in Denning v. Smith, 3 Johns Ch. R., 344.
In the case of Whiting et al. v. The Bank of U. S., 9 Peters, 11, decided by Judge Story, the bill, though not altogether in form, was, in substance, a bill of review. It was the case of a sale by decree of Court under a mortgage. The bill of review was filed by parties who were heirs of one Whiting, who, though not owner, had an interest in the land sold. The decree of foreclosure was made before Whiting’s death; the sale afterwards, without revivor against his heirs. In the original case, one Breckenridge had not been made a party, who, the Court said, should properly have been a party. In speaking of the decree of foreclosure as final, the Judge says: “The defendants had a right' to appeal from that decree as final upon the merits, as soon as it was pronounced, in order to prevent an irreparable mischief to themselves. Eor if the sale had been completed under the decree, the title of the purchaser *504 would not have been overthrown or invalidated, even by a reversal of the decree.” Again, in speaking of Breckenridge’s not having been a party, he says : “ We think, therefore, that this error, if any there be, not being to the prejudice of complainants, cannot furnish any ground for them to maintain the present bill; for no party to a decree can, by the general principles of equity, claim a reversal of a decree upon a bill of review, unless he has been aggrieved by it, whatever may have been his rights to insist on the error at the original hearing, or on an appeal.” As to the omission to revive against Whiting’s heirs, the Judge says: “If then the original decree was unobjectionable and conclusive; if there has beén no fraud in the subsequent sale, pursuant to that decree, and if there has been in a legal sense,” (this, refers to the sale under which this property was probably sacrificed,) “ no prejudice to any of the rights of the plaintiffs in the original decree, or the sale then, although there was no revivor, there is no error upon which a bill of review will lie, to entitle the parties to a reversal.” Without saying whether this, was error or not, the Court “ does mean to say that the non-revival was not matter of error, for which the proceeding on the sale under the original decree (for that is all which the present bill seeks to redress) can, or ought to be reversed.” The same principle in regard to bona fide purchasers is sustained, though not upon bills of review, in two cases in Kentucky, one of Amos v. Stockton, 5 J. J. Marsh., 638, and the other of Kercheval v. Berry, 6 J. J. Marsh., 508; these cases were decided upon writs of error, the writ of error, as it *505 is believed in Kentucky, reacting only error upon the face of the record, as in a bill of review.
There is one case cited in complainant’s brief, which would seem, at first view, to’ be in conflict with this doctrine, but which, when rightly looked at, is by no means at variance with it. It is the case of the Bank of U. S. v. Ritchie, 8 Peters, 140. It was a case where an administrator to an estate had purchased the land of his intestate fraudulently, under a decree in a cause to which he was a party. The proceedings were reversed upon review, and the sale set aside. The administrator was in no sense a bona fide purchaser; being an original party, he had actual notice of all the proceedings, and was guilty also of acts of bad faith.
In the case now before the Court, the whole object of review and reversal is, manifestly, to affect the purchasers at the sale. No fraud is charged against them, nor against any one else. The complainants are not shown to have been aggrieved by any error in the record, unless it be a grievance that the property has since risen in value. If the reversal is not to affect the purchasers, it would be but a barren and bootless victory, giving hopes that might lead to litigation and embarrassment, but which must result in injury to all concerned.
It is urged, however, that the Court can neither look to consequences, nor to the statements in the bill of review, except so far as those statements are rigidly connected with the question of error apparent on the face of the record, so far as that part of the case is concerned. To the first of these propositions, we do not unqualifiedly assent, and we think we are sustained in this, both by reason and authority; .to the second, we *506 may assent without affecting the conclusions to which we are brought.
Upon the whole matter then, we are of opinion that there was no error in the decree of the Chancellor; that leave was properly refused to file this as a bill of review for new matter or upon new proof, and that when filed as for errors apparent on the face of the record, ft was properly dismissed.
Let the decree be affirmed.